LUKE A. BUSBY, ESQ
Nevada Bar No. 10319
LUKE ANDREW BUSBY, LTD.
316 California Ave # 82
Reno, Nevada 89509
O: 775.453.0112
luke@lukeandrewbusbyltd.com
*Designated Resident Nevada Counsel for Plaintiff*

| Sarah Grady* | David B. Owens* |
|---|---|
| Loevy & Loevy | Loevy & Loevy |
| 311 N. Aberdeen St., 3rd Fl. | 100 S. King St., St. 100 |
| Chicago, IL 60607 | Seattle, WA 98104 |
| O: 312.243.5900 | O: 312-243-5900 |
| sarah@loevy.com | david@loevy.com |

*Motion for admission pro hac vice forthcoming
*Counsel for Plaintiff Craig Farah, Personal Representative of the Estate of Nicholas Farah*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEVADA**

| | |
|---|---|
| CRAIG FARAH, Personal Representative of the ESTATE OF NICHOLAS FARAH, | |
| Plaintiff, | |
| vs. | No. |
| LAS VEGAS METROPOLITAN POLICE DEPARTMENT; RICHARD NEWMAN; SAMUEL MENDOZA; AARON MOSELY; JEREMY STEWART; CHRISTY SNAPP; GABRIEL VILLANUEVA; KIM SOFFE; and COLLIN PETRIELIUS, | **COMPLAINT** |
| Defendants. | JURY TRIAL DEMANDED |

Now comes Plaintiff, Craig Farah, as Personal Representative of the Estate of Nicholas Farah, by and through his undersigned counsel, and complains of Defendants Las Vegas Metropolitan Police Department, Richard Newman, Samuel

1

Mendoza, Aaron Mosely, Jeremy Stewart, Christy Snapp, Gabriel Villanueva, Kim Soffe, and Collin Petrielius, stating as follows:

## Introduction

1. On March 31, 2019, Nicolas Farah entered the Clark County Detention Center (CCDC) after being arrested. While still in the sally port at CCDC, a completely controlled environment, Defendants Newman, Mendoza, Mosely, and Stewart forced Mr. Farah into a restraint chair. As they did so, these Defendants shoved Mr. Farah's head between his knees and lifted his arms behind his back for a sustained period of time. So much force was used that that these Defendants cut off Mr. Farah's airway, causing him to suffocate.

2. None of the Defendants intervened to prevent the unreasonable suffocation of Mr. Farah by Defendants Newman, Mendoza, Mosely, and Stewart, even when Mr. Farah had obviously lost consciousness and required emergency medical attention.

3. Ultimately, Mr. Farah died from the injuries inflicted by Defendants, and the Clark County Medical Examiner's subsequent autopsy determined that his death was a homicide caused by positional asphyxia.

4. Defendants' use of the restraint chair and the unreasonable force used in conjunction with use of the chair was the result of deliberate indifference by the Las Vegas Metropolitan Police Department, which permitted unreasonable uses of positional force and inappropriate uses of restraint chairs to flourish at the CCDC.

## Jurisdiction and Venue

5. This Court has jurisdiction pursuant to 28 U.S. §§ 1331 and 1367.

6. Venue is proper under 28 U.S.C. § 1391(b). On information and belief, one or more Defendants reside in this judicial district, and a substantial portion of the events giving rise to the claims asserted herein occurred within this district.

## Parties

7. Nicholas Farah, the decedent, was 36 years old, and was a resident of Appleton, Wisconsin at the time of his death. Mr. Farah was a loving father to his two children, who will now grow up without a father. At all times relevant to this case, Nicholas Farah was in the custody of the Las Vegas Metropolitan Police Department.

8. Plaintiff Craig Farah is the duly appointed Personal Representative of the Estate of Nicholas Farah. Plaintiff is Nicholas Farah's father.

9. Defendant Las Vegas Metropolitan Police Department (LVMPD) is a political subdivision of the State of Nevada, and employed all of the individually named Defendants. The LVMPD is liable for all state-law torts committed by the Defendants pursuant to the doctrine of *respondeat superior*. The LVMPD is responsible for its own written and unwritten policies, practices, and customs.

10. At all times relevant to his involvement in this case, Defendant Richard Newman was a corrections sergeant at the CCDC. Defendant Newman is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Newman was acting under color of law and within the scope of his employment with the LVMPD.

11. At all times relevant to his involvement in this case, Defendant Samuel Mendoza was a corrections sergeant at the CCDC. Defendant Mendoza is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Mendoza was acting under color of law and within the scope of his employment with the LVMPD.

12. At all times relevant to his involvement in this case, Defendant Aaron Mosely was a corrections officer at the CCDC. Defendant Mosely is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Mosely was acting under color of law and within the scope of his employment with the LVMPD.

13. At all times relevant to his involvement in this case, Defendant Jeremy Stewart was a corrections officer at the CCDC. Defendant Stewart is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Stewart was acting under color of law and within the scope of his employment with the LVMPD.

14. At all times relevant to her involvement in this case, Defendant Christy Snapp was a corrections officer at the CCDC. Defendant Snapp is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Snapp was acting under color of law and within the scope of her employment with the LVMPD.

15. At all times relevant to his involvement in this case, Defendant Gabriel Villanueva was a police officer in the Enterprise Area Command unit. Defendant Villanueva is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Villanueva was acting under color of law and within the scope of his employment with the LVMPD.

16. At all times relevant to her involvement in this case, Defendant Kim Soffe was an emergency medical technician at the CCDC. Defendant Soffe is sued here in her individual capacity. At all times relevant to the events at issue in this case, Defendant Soffe was acting under color of law and within the scope of her employment with the LVMPD.

17. At all times releant to his involvement in this case, Defendant Collin Petrielius was an emergency medical technician at the CCDC. Defendant Petrielius is sued here in his individual capacity. At all times relevant to the events at issue in this case, Defendant Petrielius was acting under color of law and within the scope of his employment with the LVMPD.

**Factual Background**

18. Mr. Farah arrived in Las Vegas shortly after noon on March 31, 2019, from a family vacation in California with his two young daughters and other family

4

members. Mr. Farah was scheduled to return to his home in Appleton, Wisconsin, later that night.

19. Sometime after 7 p.m., Mr. Farah's backpack was stolen, including his cell phone and other personal items. Mr. Farah went into a nearby La Quinta Inn to try to get a ride to the airport so that he could return home. Mr. Farah asked a dispatcher with the Las Vegas Metropolitan Police Department (LVMPD) to help, but the dispatcher told him that the police were not a taxi service and would not help him get to the airport.

20. Defendant Villanueva and another LVMPD officer arrived at La Quinta at approximately 8:30 p.m., following a call by an employee. Upon arrival, Mr. Farah was standing calmly inside the entrance of the hotel. One of the officers told Mr. Farah he was being "very respectful," or words to that effect.

21. Mr. Farah was eventually placed under arrest and was put into the back of Officer Villanueva's squad car.

22. After placing him in the back of the car, another LVMPD officer contacted a supervisor to report that no force had been necessary in the interaction with Mr. Farah.

23. Defendant Villanueva drove Mr. Farah to the Clark County Detention Center (CCDC). Upon his arrival in the CCDC sally port, Mr. Farah exited Defendant Villanueva's car. Defendants Newman, Mendoza, Mosley, and Stewart then dragged Mr. Farah from the police car and forced him into a restraint chair.

24. Defendants Soffe, Petrelius, Villanueva, and Snapp stood nearby.

25. Mr. Farah requested a lawyer as officers pinned him into the chair.

26. As Defendants Newman, Mendoza, Mosley, and Stewart forcibly clipped Mr. Farah into the restraint chair, Mr. Farah panted and gazed fearfully into the hand-held camera operated by Defendant Snapp.

27. Defendants Newman, Mendoza, Mosley, and Stewart forced Mr. Farah's head between his legs and stretched his arms behind his back as they replaced his handcuffs with a different pair.

28. At no time did Mr. Farah resist against the attempts to exchange the restraints on his hands.

29. At no time did Mr. Farah attempt to stand up from or otherwise escape the restraint chair.

30. Mr. Farah continued to groan and express discomfort as these four Defendants pressed down on his neck, back, and shoulders.

31. While Defendants Newman, Mendoza, Mosley, and Stewart continued to force Mr. Farah's head between his legs while pulling his arms above his head behind his back, Mr. Farah obviously lost consciousness and went limp.

32. This force was excessive, unreasonable, and unwarranted.

33. Nonetheless, these four Defendants did not cease using force against Mr. Farah or lessen the amount of force being used, and none of the Defendants took any action to intervene.

34. When these four Defendants pulled Mr. Farah upright to a sitting position, he was obviously unconscious and slumped forward. Yet none of the Defendants took any steps to provide Mr. Farah emergency medical attention for his obvious medical needs.

35. Instead, Defendants Newman, Mendoza, Mosley, and Stewart ignored the crisis of their own making and casually continued fastening Mr. Farah into the restraint chair's belts as Mr. Farah began to die in their arms.

36. Eventually, as Mr. Farah was being transported from the sally port into the CCDC, Defendant Soffe requested that Mr. Farah be taken out of the restraint chair. By this time, Mr. Farah's face had already turned a blue-gray color; Mr. Farah was unresponsive to verbal or physical stimuli; and he did not have a pulse.

37. Mr. Farah died as a result of Defendants' actions.

38. The Clark County Medical Examiner, who conducted Mr. Farah's autopsy, determined that Mr. Farah's death was caused by asphyxia during restraining procedures including blunt force injures. The manner of death was determined to be a homicide.

39. LVMPD policymakers knew that use of restraint chairs present a substantial risk of medical injury and death to detainees placed in them, especially when used in conjunction with substantial positional force. Despite this knowledge, CCDC officers were encouraged to use restraint chairs frequently, even when using substantial positional force.

40. Moreover, the LVMPD, through its officials, has determined that officers' use of positional force in Mr. Farah's case were consistent with, and reflective of LVMPD policy.

41. The LVMPD has ratified the actions of the individual defendants.

42. LVMPD policymakers also knew that CCDC officers were using force against detainees at CCDC that caused them to die of positional asphyxia. In fact, multiple detainees have died as a result of positional asphyxia at the CCDC.

43. Nonetheless, by its actions and inactions—including its refusal to take corrective actions or implement obviously-needed procedural safeguards concerning positional asphyxia—LVMPD encourages officers like those here to use positional force when placing detainees in restraint chairs, despite the obvious risk of substantial harm or death caused by such actions.

44. The Defendants' actions imposed substantial harm on Mr. Farah during the period of time after which he was seized and before he ultimately passed away. Mr. Farah suffered through the agony of being suffocated to death, and the tragic fact he could do nothing to stop the officers from choking him or to force others to intervene.

45. In addition, Mr. Farah lost the opportunity to live the remainder of his natural life, to see his children grow up and to experience the joys of life that family typically brings.

46. Mr. Farah's minor children have also suffered. They will now spend the rest of their lives without their father, and all of the care, protection, guidance, and other meaningfully contributions that Mr. Farah would have had on their lives as they grow older.

47. Other members of the Farah family have also suffered harm. For example, Plaintiff lost his son through the senseless and unjustified actions of Defendants. Indeed, since this incident happened, the family has experienced great distress, as Mr. Farah was loved and cared for by his children, partner, extended family members, as well as those within his community in Appleton, Wisconsin. They have all been harmed by his tragic, unnecessary death.

## COUNT I
### 42 U.S.C. § 1983 – Excessive Force (Fourth Amendment)
### Defendants Newman, Mendoza, Mosley, and Stewart

48. Each of the Paragraphs of this Complaint is incorporated herein.

49. In the manner described more fully above, Defendants Newman, Mendoza, Mosley, and Stewart used force against Mr. Farah in violation of his constitutional rights, including but not limited to those under the Fourth and Fourteenth Amendments of the United States Constitution, due to the use of force that was unjustified.

50. The misconduct described in this Count was objectively unreasonable and undertaken with willfulness and reckless indifference to the rights of others.

51. As a direct and proximate result of the excessive force used by Defendants Newman, Mendoza, Mosley, and Stewart, Mr. Farah suffered injuries, including pain, emotional distress, and ultimately death.

## COUNT II
### 42 U.S.C. § 1983 – Failure to Intervene (Fourth Amendment)
### All Individual Defendants

52. Each of the Paragraphs of this Complaint is incorporated herein.

53. In the manner more fully described above, Defendants had a reasonable opportunity to intervene to prevent the violation of Mr. Farah's constitutional rights, and the severity of injuries that he suffered as a result of the violation of those rights, had they been so inclined.

54. Defendants failed to take any action to intervene.

55. Defendants' failures to act were intentional, and/or taken with reckless indifference to Mr. Farah's rights.

56. As a direct and proximate result of the failure to intervene, Mr. Farah's rights were violated and he suffered injuries, including but not limited to pain, emotional distress, and ultimately death.

## COUNT III
### 42 U.S.C. § 1983 – Monell Claim
### Defendant LVMPD

57. Each of the Paragraphs of this Complaint is incorporated herein.

58. In the manner more fully described above, prior to the events giving rise to Plaintiff's Complaint, Defendant LVMPD had notice of policies, practices, and customs by staff at CCDC pursuant to which arrestees and detainees, like Mr. Farah, were subjected to unreasonable uses of positional force. Despite knowledge of these policies, practices and customs, Defendant LVMPD did nothing to ensure that arrestees and detainees at CCDC were treated appropriately, thereby acting with deliberate indifference.

59. The LVMPD, through its approval of the Defendant Officers' actions, has ratified their conduct by indicating that the Defendant Officers acted pursuant to the polices, customs, and practices of the Department.

60.     In addition, in the manner more fully described above, prior to the events giving rise to Plaintiff's Complaint, Defendant LVMPD had notice of policies, practices, and customs by staff at CCDC pursuant to which arrestees and detainees, like Mr. Farah, were unreasonably forced into a restraint chair while positional force was being used against them. Despite knowledge of these policies, practices, and customs, Defendant LVMPD did nothing to ensure that arrestees and detainees at CCDC were treated appropriately, thereby acting with deliberate indifference.

61.     The LVMPD maintains written policies, but they were deficient here, giving rise to an obvious "gap" in policy, given the frequency with which patrol officers detain citizens and transfer them to the CCDC.

62.     These unconstitutional policies, practices, and customs were allowed to flourish because Defendant LVMPD, which runs the CCDC, directly encouraged the very type of misconduct at issue in this case, failed to provide adequate training and supervision of staff, and failed to adequately punish or discipline prior instances of similar misconduct. In this way, Defendant LVMPD violated Mr. Farah's rights by maintaining policies and practices that were the moving force driving the foregoing constitutional violations.

63.     As a result of the LVMPD's policies, practices and customs, and the unjustified and unreasonable conduct of the Defendant Officers, Mr. Farah suffered injuries, including pain, suffering, emotional distress, death, and a host of other harms.

**COUNT IV**
**NRS § 41.100 (Survival Action) – Battery**
**Defendants Newman, Mendoza, Mosley, and Stewart**

64.     Each of the Paragraphs of this Complaint is incorporated herein.

65.     In the manner described more fully above, Defendants Newman, Mendoza, Mosley, and Stewart intentionally applied force to Mr. Farah.

10

66. The force used by these Defendants was objectively unreasonable in light of the circumstances.

67. As a direct and proximate result of the excessive force used by Defendants Newman, Mendoza, Mosley, and Stewart, Mr. Farah suffered injuries, including pain, suffering, and emotional distress.

68. Defendants Newman, Mendoza, Mosley, and Stewart were acting under color of law and within the scope of their employment when they committed battery against Mr. Farah.

69. Through the doctrine of *respondeat superior*, Defendant LVMPD is liable as a principal for all torts committed by its employees or agents, including the misconduct of Defendants Newman, Mendoza, Mosley, and Stewart described in this Count.

70. Mr. Farah filed no action during his lifetime, but under the law of the State of Nevada, this action survives and may be asserted by Plaintiff as the personal representative of his estate.

71. Plaintiff Craig Farah, as personal representative of the Estate of Nicholas Farah, claims damages for the conscious pain and suffering of Nicholas Farah, pursuant to NRS § 41.100.

**COUNT V**
**NRS § 41.100 (Survival Action) – Negligence**
**All Defendants**

72. Each of the Paragraphs of this Complaint is incorporated herein.

73. As employees of the LVMPD, each of the Defendants owed a duty to Nicholas Farah, who was in LVMPD custody.

74. In the manner more fully described above, Defendants breached the duty that each of them owed to Mr. Farah by failing to prevent the continued excessive use of force against him, and/or by failing to provide him with medical attention until after he had died.

75. Alternatively, the actions of the Defendants were grossly negligent in that they demonstrated an utter indifference to the safety of others. Defendants were conscious that an injury would probably result from the above-described course of action and reckless disregarded the consequences of those actions.

76. As a direct and proximate result of Defendants' negligence, Mr. Farah suffered injuries, including pain, suffering, and emotional distress.

77. The individually named Defendants were acting under color of law and within the scope of their employment when they acted and/or failed to act as described in this Count.

78. Through the doctrine of *respondeat superior*, Defendant LVMPD is liable as a principal for all torts committed by its employees or agents, including the misconduct of the individually named Defendants described in this Count.

79. Mr. Farah filed no action during his lifetime, but under the law of the State of Nevada, this action survives and may be asserted by Plaintiff as the personal representative of his estate.

80. Plaintiff Craig Farah, as personal representative of the Estate of Nicholas Farah, claims damages for the conscious pain and suffering of Nicholas Farah, pursuant to NRS § 41.100.

**COUNT VI**
**NRS § 41.085 (Wrongful Death) – Battery**
**Defendants Newman, Mendoza, Mosley, and Stewart**

81. Each of the Paragraphs of this Complaint is incorporated herein.

82. In the manner described more fully above, Defendants Newman, Mendoza, Mosley, and Stewart intentionally applied force to Mr. Farah.

83. The force used by these Defendants was objectively unreasonable in light of the circumstances.

84. As a direct and proximate result of the excessive force used by Defendants Newman, Mendoza, Mosley, and Stewart, Mr. Farah suffered injuries, including death.

85. Defendants Newman, Mendoza, Mosley, and Stewart were acting under color of law and within the scope of their employment when they committed battery against Mr. Farah.

86. Through the doctrine of *respondeat superior*, Defendant LVMPD is liable as a principal for all torts committed by its employees or agents, including the misconduct of Defendants Newman, Mendoza, Mosley, and Stewart described in this Count.

87. Plaintiff Craig Farah, Nicholas Farah's two daughters, and all other legally recognized family members claim damages for the wrongful death of Nicholas Farah, and for the loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, and for the mental anguish caused by this loss, as well for expenses incurred as a result of Nicholas Farah's death.

### COUNT VII
### NRS § 41.085 (Wrongful Death) – Negligence
### All Defendants

88. Each of the Paragraphs of this Complaint is incorporated herein.

89. As employees of the LVMPD, each of the Defendants owed a duty to Nicholas Farah, who was in LVMPD custody.

90. In the manner more fully described above, Defendants breached the duty that each of them owed to Mr. Farah by failing to prevent the continued excessive use of force against him, and/or by failing to provide him with medical attention until after he had died.

91. Alternatively, the actions of the Defendants were grossly negligent in that they demonstrated an utter indifference to the safety of others. Defendants

were conscious that an injury would probably result from the above-described course of action and reckless disregarded the consequences of those actions.

92. As a direct and proximate result of Defendants' negligence, Mr. Farah suffered injuries, including death.

93. The individually named Defendants were acting under color of law and within the scope of their employment when they acted and/or failed to act as described in this Count.

94. Through the doctrine of *respondeat superior*, Defendant LVMPD is liable as a principal for all torts committed by its employees or agents, including the misconduct of the individually named Defendants described in this Count.

95. Plaintiff Craig Farah, Nicholas Farah's two daughters, and all other legally recognized family members claim damages for the wrongful death of Nicholas Farah, and for the loss of his services, protection, care, future income, assistance, society, companionship, comfort, guidance, counsel and advice, and for the mental anguish caused by this loss, as well for expenses incurred as a result of Nicholas Farah's death.

### COUNT VIII
### NRS § 41.349 – Indemnification
### Defendant LVMPD

96. Each of the Paragraphs of this Complaint is incorporated herein.

97. Nevada law provides that LVMPD is directed to pay any tort judgment for damages for which their employees are liable within the scope of their employment activities.

98. Defendants Richard Newman, Samuel Mendoza, Aaron Mosely, Jeremy Stewart, Christy Snapp, Gabriel Villanueva, Kim Soffe, and Collin Petrielius were employees of Defendant LVMPD and acted within the scope of their employment at all times relevant in committing the actions and omissions described above.

Wherefore, Plaintiff, Craig Farah, as Personal Representative of the Estate of Nicholas Farah, by and through his undersigned counsel, hereby respectfully requests that this Court enter a judgment in his favor and against Defendants Las Vegas Metropolitan Police Department, Richard Newman, Samuel Mendoza, Aaron Mosely, Jeremy Stewart, Christy Snapp, Gabriel Villanueva, Kim Soffe, and Collin Petrielius, awarding compensatory damages, punitive damages, costs, attorneys' fees, and any other relief that this Court deems just and appropriate.

## JURY DEMAND

Plaintiff Craig Farah hereby demands a trial by jury pursuant to Rule 38(b) of the Federal Rules of Civil Procedure on all issues so triable.

Dated:        March 30, 2020

Respectfully submitted,

CRAIG FARAH

By: /s/ Luke A Busby
Designated Resident Nevada Counsel
for Plaintiff

LUKE A. BUSBY, ESQ
Nevada Bar No. 10319
LUKE ANDREW BUSBY, LTD.
316 California Ave # 82
Reno, Nevada 89509
O: 775.453.0112
luke@lukeandrewbusbyltd.com
*Designated Resident Nevada Counsel for Plaintiff*

Sarah Grady*
Loevy & Loevy
311 N. Aberdeen St., 3rd Fl.
Chicago, IL 60607
O: 312.243.5900
sarah@loevy.com

David B. Owens*
Loevy & Loevy
100 S. King St., St. 100
Seattle, WA 98104
O: 312-243-5900
david@loevy.com

*Motion for admission pro hac vice forthcoming
*Counsel for Plaintiff Craig Farah, Personal Representative of the Estate of Nicholas Farah*